```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
PSG POKER, LLC, and PHIL GORDON,         :
                 Plaintiffs,             :
                                         :     06 Civ. 1104 (DLC)
                                         :
          -v-                            :     MEMORANDUM OPINION
                                         :         AND ORDER
                                         :
TONY DeROSA-GRUND, PROJO POKER           :
TOURNAMENT SERIES, LLC., PROJO POKER     :
TOURNAMENT SERVICES, LLC., and PROJO     :
POKER TOURNAMENT SERVIES, LLC.,          :
                 Defendants.             :
                                         :
----------------------------------------X
```

Appearances

For Plaintiffs:
Jonathan J. Ross
Caplan & Ross, L.L.P.
100 Park Avenue, 18th Floor
New York, NY, 10017

For Defendant Tony DeRosa-Grund:
Pro Se
600 Pocono Boulevard
Mt. Pocono, PA 18344

DENISE COTE, District Judge:

On January 22, 2008, the Court entered summary judgment in favor of the plaintiffs, PSG Poker, LLC ("PSG Poker") and its principal member Phil Gordon ("Gordon"), and referred the matter to Magistrate Judge James C. Francis IV for an inquest as to damages. A hearing was held on May 9, 2008. Defendant Tony DeRosa-Grund ("DeRosa-Grund"), the only remaining defendant in the action, did not appear, despite having been afforded notice

of the hearing. On July 12, 2008, Judge Francis issued his Report and Recommendation ("Report"), which recommends that judgment be entered in favor of the plaintiffs and against DeRosa-Grund for $340,000 in compensatory damages, $200,000 in punitive damages, and $36,266.70 in attorneys' fees, for a total of $576,266.70 (with interest to the date of judgment as described in further detail below). Neither party has submitted objections to the Report. For the following reasons, the Report's recommendations are adopted and judgment entered against the DeRosa-Grund in the amount described below.

The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendations of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." Figueroa v. Riverbay Corp., No. 06 Civ. 5364(PAC), 2006 WL 3804581, at *1 (S.D.N.Y. Dec. 22, 2006) (citation omitted).

The factual background and procedural history of this action was outlined in detail in the Court's Opinion of January 22, 2008, familiarity with which is assumed. PSG Poker, LLC v. DeRosa-Grund, No. 06 Civ. 1104, 2008 WL 190055, at *1-7 (S.D.N.Y. Jan. 22, 2008) ("January 22 Opinion"). In sum, plaintiffs alleged that DeRosa-Grund breached a contract entered

into with Gordon (the "December 2005 Contract"), pursuant to which Gordon -- in exchange for acting as "on-camera poker analyst" for a series of television shows to be produced by a corporation controlled by DeRosa-Grund (referred to in the January 22 Opinion as "Projo") -- was to be paid $340,000. Under the terms of the contract, $170,000 was to be paid to Gordon "within 15 business days of the execution of" the contract, with the remaining $170,000 to be paid in installments over a two-year term. As concluded in the January 22 Opinion, "[t]he evidence in the record demonstrates conclusively -- and, in fact, it is undisputed -- that the December 2005 Contract existed between the plaintiffs and DeRosa-Grund/Projo, that plaintiffs stood ready to perform under that Contract, that the $170,000 execution payment was not made, that such failure constituted a breach of the Contract, and that the breach caused damage to the plaintiffs." January 22 Opinion, 2008 WL 190055, at *7. The Court further found that "no reasonable trier of fact could conclude anything other than that Projo was a mere instrumentality or alter ego of its owner," and thus pieced the corporate veil to hold DeRosa-Grund personally liable for breach of the December 2005 Contract. Id. at *10 (citation omitted). Finally, the January 22 Opinion also granted summary judgment to the plaintiffs on their claim that DeRosa-Grund "fraudulently induce[d] Gordon to, inter alia, commence and pay for litigation

to make himself available to host the ProJo poker programs; leave his job with CPS and Bravo; and -- perhaps most importantly -- put aside any opportunity he may have had to reverse the damage caused by those acts." Id. at *13.

The Report makes the following recommendations as to damages to be recovered for these claims. First, with respect to compensatory damages for the breach of contract, the Report correctly applied the rule that, "[u]nder New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003). The Report therefore recommends an award for $340,000, the entire amount Gordon would have been paid under the contract had DeRosa-Grund performed.

Second, the Report recommends an award of prejudgment interest at the New York statutory rate of nine percent per year, compounded annually. See N.Y. C.P.L.R. §§ 5001(a), 5004. "Under New York law, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract. N.Y. C.P.L.R. § 5001(a) makes such interest mandatory." New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 606 (2d Cir. 2003) (citation omitted). Pursuant to N.Y. C.P.L.R. § 5001(b), the Report further recommends that, (1) with respect to the initial

$170,000 payment the plaintiffs were due within fifteen business days of execution of the contract (December 17, 2005), plaintiffs are entitled to "interest at the rate of nine percent, compounded annually, accruing on the principal amount of $170,000 from January 1, 2007, through the date of judgment," and (2) with respect to the $170,000 plaintiffs were to be paid over the term of the contract (January 1, 2006 to December 31, 2007), plaintiffs are entitled to prejudgment interest running from the mid-point of the contract, January 1, 2007, to the date of judgment.  See N.Y. C.P.L.R. § 5001(b) ("Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.").

Third, the Report recommends an award of attorneys' fees based upon a provision of the contract between the parties that provides for the award of such fees to the "prevailing party" in any "action, suit or other proceeding . . . to remedy, prevent, or obtain relief from a default in the performance by any party of such party's obligations under" the contract.  As to the amount, the Report recommends an award of $36,266.70, which represents a thirty percent discount from the amount documented by the plaintiffs.  The Report recommends this result in light of the "vagueness, inconsistenc[y], and other deficiencies in the billing records" submitted by the plaintiffs in support of

their application.  Kirsh v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (reducing requested amount by twenty percent).[1]

Fourth, the Report recommends rejecting Gordon's claim that he should be awarded compensatory damages in connection with his fraudulent inducement claim for (1) monies he would have been paid had he not left his previous employment in order to work for DeRosa-Grund ($66,150.00), and (2) the attorneys' fees he incurred in terminating that employment ($28,717.77).  The Report recommends that such damages not be awarded because doing so "would put Mr. Gordon in a better financial position than he would have been in had the contract" not been breached by DeRosa-Grund, since Gordon could not have simultaneously continued his prior employment and also worked on DeRosa-Grund's poker programs.  See also Rodriguez v. Kulcsar, No. 07 Civ. 251 (DLC), 2007 WL 3120906, at *2 (S.D.N.Y. Oct. 24, 2007) ("Under New York law . . . "out-of-pocket" losses are the measure of actual damages for fraudulent inducement.").[2]

---

[1] The Report notes that the bills submitted by the plaintiff "do not specify whether the attorney working on the case was a partner or associate, the experience of the attorney, the type of activity performed by the attorney, the amount of time spent on each activity, or even an hourly rate.  They simply state a billing period and balance due for each period."

[2] As the New York Court of Appeals long ago explained,

> What profits the plaintiff might have made was immaterial.  That was not the question to be

Fifth, and finally, the Report recommends the imposition of $200,000 in punitive damages in connection with the fraudulent inducement claim.

> To obtain punitive damages in ordinary tort actions, a New York plaintiff not only must show that the defendant committed a tort, but also must demonstrate the existence of "circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton."

Carvel Corp. v. Noonan, 350 F.3d 6, 24 (2d Cir. 2003) (quoting Prozeralik v. Capital Cities Commc'ns, Inc., 82 N.Y.2d 466, 479 (1993)). In light of the record evidence of (1) DeRosa-Grund's repeated affirmative misrepresentations to Gordon, and (2) DeRosa-Grund's use of the corporate form as a "vehicle for fraud," the Report concludes that punitive damages are appropriate here. As to the amount, the Report recommends the adoption of the plaintiffs' requested amount of $200,000, which

---

> determined. The question was what did he lose by being deceived into making the contract to purchase the cider. The true measure of damage in an action for fraud is indemnity for the actual pecuniary loss sustained as the direct result of the defendants' wrong. It does not include profits which he could have made on contracts with third parties.

Foster v. Di Paolo, 236 N.Y. 132, 134 (1923).

7

is approximately twice the amount of actual damages claimed (but not awarded) on the fraudulent inducement claim.[3]

The Court perceives no clear error in the Report's recommendations. A judgment will therefore be entered against DeRosa-Grund in the amount recommended.

CONCLUSION

Finding no clear error in Magistrate Judge Francis's Report, the Report is adopted. The Clerk of Court shall enter judgment against defendant DeRosa-Grund for $340,000 in

---

[3] The Report further noted that (1) a punitive damages award in this amount does not violate the defendant's due process rights under BMW of North America, Inc. v. Gore, 517 U.S. 559, 581 (1996), and (2) that while it is true that punitive damages are generally only awarded if compensatory damages are also awarded for the same claim, citing Queenie, Ltd. v. Nygard International, 321 F.3d 282, 290 (2d Cir. 2003), here punitive damages are appropriate because "compensatory damages were not awarded for fraudulent inducement only because they would have been duplicative in light of the damages awarded for the breach of contract claim, not because the defendant was not liable or that damages did not exist." It should also be noted that, even assuming that the $66,150 in forfeited compensation requested by plaintiffs would also be unrecoverable under New York's "out-of-pocket" rule -- and thus excluded from the calculation of the compensatory-to-punitive damages ratio -- the punitive damages awarded here still would be within the outer bounds established by the Due Process Clause, with an approximately 7-to-1 ratio between punitive ($200,000) and compensatory ($28,717.77) damages. See State Farm Mut. Automo. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) ("[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."); see also BMW of N. Am., 517 U.S. at 582 (noting that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages").

compensatory damages, $200,000 in punitive damages, and $36,266.70 in attorneys' fees, for a total of $576,266.70, together with interest calculated at the rate of nine percent per year, compounded annually, on a principle amount of $170,000 running from January 1, 2006 through the date of judgment, and also on a principle amount of $170,000 running from January 1, 2007 to the date of judgment. The Clerk of Court shall also close the case. The parties' failure to file written objections precludes appellate review of this decision. See <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997).

SO ORDERED:

Dated: New York, New York
August 15, 2008

_____
DENISE COTE
United States District Judge

COPIES MAILED TO:

| | |
|---|---|
| Jonathan J. Ross<br>Brian D. Caplan<br>Caplan & Ross, L.L.P.<br>100 Park Avenue, 18th Floor<br>New York, NY, 10017 | Tony DeRosa-Grund<br>600 Pocono Blvd.<br>Mt. Pocono, PA 18344 |